The next case for argument is 15-5074 Northrop Grumman Computing v. United States. This case is 15-5074 Northrop Grumman Computing v. United States. Mr. Eisenberg, I'm sure you're ready. Let's make sure the other side is on. Okay. Thank you. May it please the Court, David Eisenberg on behalf of the appellant, Northrop Grumman, in this appeal. The issue on this appeal is whether there's any basis in contract law to relieve the government of its obligations under the delivery order. Because we believe there is not, we would respectfully ask this Court to reverse the decision below. Well, Mr. Eisenberg, Northrop argues that because it's bringing the claim on its own behalf that we should ignore the pre-financing agreement with ESC. Is that how you refer to it, esc.gov? Yes. Okay. And only look to whether the government has satisfied its performance under the contract with Northrop. Am I correct? That's correct. But as to whether Northrop has suffered any injury as a result of the government's failure to satisfy its end of the bargain, Northrop asserts that the Court should look to the pre-financing agreement that we were supposed to ignore. Isn't that contradictory? Well, Northrop's not asking the Court to look to the pre-financing agreement. We believe that the government is asking the Court to look to the pre-financing agreement. In fact, it's our position, Northrop Grumman's position, that based on this Court's opinion in the earlier appeal, there are several reasons why you should not look at the pre-financing agreement in connection with Northrop Grumman's expectation damages. There were several findings in the opinion below. One was that the contract was void as to the government. Northrop says in his brief, Northrop has not been released and continues to have obligations to cooperate with the finance companies to pursue any good claim in good faith. That's the core of your argument, isn't it? Well, Northrop does have – there's two contracts here. One is the contract between Northrop and the government. The other is the contract between Northrop and the finance company. There's two separate expectations. There's two separate considerations. In connection with the contract with the finance company, the finance company provided Northrop money and Northrop has obligations to the finance company with respect to the government contract. What are those obligations? You're not paying them back. You're not going to – you're not suffering any loss as a result of the breach, right? It's all absorbed by the finance company under the agreement you have, right? Well, Your Honor, in that case, I would look to the decisions that this Court has cited in the earlier appeal. Can you answer my question first and then you can go on to explain it? Northrop does have a loss. Northrop has a loss because Northrop provided – under the government contract, Northrop provided performance to the government and in exchange for that performance, the government had performance and payment obligations to Northrop Grumman. That was Northrop Grumman's expectation when it entered into that contract. Okay. And will you get the – but you've gotten that money. Northrop Grumman has never received that money from the government. Wait a minute. Wait a minute. Has it received the money? Money is fungible, isn't it? Northrop hasn't received the money. The money that Northrop received was money from the finance company. That's separate money under a separate contract, under a contract that's void as to the government. So if it's void as to the government, the government shouldn't be able to use the benefit of that contract. Okay. Let me ask you this. If the government pays that money, does Northrop report it twice on its income tax returns? If the government pays that money to Northrop, and Northrop does, is Northrop remits the money to the finance company. It's no different than under Beaconware and Colonial Navigation. In both of those cases cited by this Court in the earlier appeal, in Beaconware, neither contractor who had the claim – and as this Court said with respect to Beaconware, the Court said that – but an attempted assignment of a claim against the United States does not forfeit the claim. Well, maybe I misunderstood the question. Okay. Let me ask you again. Is Northrop going to report that income twice on its returns? Is it going to book it as two separate incomes? I actually don't know the answer to that. I don't know how Northrop reports the money that it receives from the government, but it has not received – But of course, you're not going to keep that money. That money will go directly to the financiers, right, under the financing agreement. Well, Northrop will have the money for a period of time, and then Northrop will remit the money. The money goes directly to Northrop, and then Northrop remits the money. The money doesn't go directly to the finance company because – I know, but it's a practical matter whether it goes to you first as a pass-through, or anything more than a pass-through with respect to any payment that might be received by the government in this – from the government in this case. No, we're not. But I don't think that that solves the issue here based on the established law. So what is the harm if you're a pass-through? If you win this case, you get pass-through of the money, and you don't get to keep the money. So you're in the exact same position you would have been whether you won or lost this case, right? Well, Your Honor, I agree. But that's no different than beacon wear on colonial navigation. If you lose this case, other than perhaps seeking a writ of certiorari, or a re-hearing in bank, are you under any further obligation to esc.gov? No. But that is no different than any of the severance-type cases where severance is not applicable here. And I would suggest that the law should not be different if this were a pass-through claim. The result is less harsh. If it's a pass-through claim than if it's a direct claim. In this case, Northrop Grumman is the party that performed all of the obligations under the contract. In beacon wear, as this Court knows, beacon wear didn't perform any obligations under that contract. So under the government's analysis, under the opinion below, beacon wear never had any expectation for any money because it didn't do any of the performance. All of the performance was done by the subcontract. Yet the claim remained with beacon wear. The issue in this case, though, isn't performance. It's damages. And the Court of Claims found on summary judgment that you did not raise a genuine issue of fact with respect to damages because you haven't been harmed in any way. What is the harm then? Where do you have a loss of income under this contract? The claim for damages, again, I would suggest it's no different than beacon wear. It's no different than colonial habitation. No, no. In this case, forget about beacon wear. In this case, where's your loss of income? Where's the damages? Well, I think the expectation damages, the contract that's at issue is the contract between Northrop and the government. The contract between Northrop and the finance company, as this Court has held. If the purpose of the lawsuit is to put you back in whole if the government had not breached on its payments, right? I mean, you're seeking to be put back in whole, but yet you are in whole already. We're not whole with respect to the contract between Northrop Grumman and the government. We're not whole with respect to that contract because there's only two parties to the contract. The expectations of Northrop Grumman when it entered into that contract was that the government would make that payment. Further, with respect to that contract, the government states in its brief that if the options were exercised, the government would have to pay the additional $2.7 million. But under the government's argument and under the argument of the Court below, if the government exercised that option, any of the three options, and didn't make the payment, nobody would be able to sue for that payment. That makes no sense, that the government would then sign this contract, exercise the three options, and not have to make any of the payments. And the reason it wouldn't have to make any of the payments is because the only party that has a claim in this case is Northrop Grumman. And if Northrop Grumman can't sue for those payments, then the government doesn't have to make them. Under that analysis, the government, once it signed this contract, and once the finance agreement was entered into, the government had no further payment obligations because Northrop Grumman's already been made whole. But they haven't been made whole under the government contract because they expected certain things from the government. And those expectancy damages have not been paid. Nobody satisfied those. They agree that no determination has been made that the government satisfied its obligations under the government contract. Can I ask you, this is outside of the record, so if you're in a position to answer, is this a routine contract, the contract that you entered into with respect to the financiers, that they pay you and irrespective of whether or not you ever collect from the government on the contract, you're home free? Yes. Is this a normal way of doing business? It is a normal way that the finance companies have done business in the context of financing government. The normal way of doing business is that you notify the government that you've entered into this financial agreement, correct? I mean, that's typically how this is done. Oftentimes that is, and that's why there's the exception to the Anti-Assignment Act, that you do notify the government and the government accepts that. The problem in this case is that you didn't give that notification. That's correct, but the issue here is one of contract damages, and the recovery of contract damages should not be dependent upon compliance with the Anti-Assignment Act. I'm glad you said that because that is the issue here, contract damages. And it seems to me that when you entered into the agreement with S-Gov and you look at the payment that was made and that payment contemplated the optional maintenance years, that you were whole from the beginning. You were made whole from the beginning. You haven't been out any money from the very outset of this whole episode. And when the government decided that we're not going to exercise the option for the maintenance years, and that's what you're suing on, you're still made whole. And I ask you, where have you been damaged? Show the injury here. I want to say show me the money, but that's not the right. Just show me the injury. The injury here is with respect to the contract with the government. The contract with the finance company is void as to the government. And as this Court said with respect to Beaconware, it leaves the claim where it was before the purported assignment. But the money you're suing for, you've already been paid. Right, but if it leaves the claim where it was before the purported assignment, and the assignment is void as to the government, the government should not be able to enforce that contract to the extent that payment was made and then not accept the other portions of this contract, which was that if Northrop Grumman receives money, it needs to remit that money to the finance company. Either the contract is relevant or it's not relevant. If it's not relevant because it's void under the Anti-Assignment Act, or it's not relevant because it's not necessary to assert a claim for monies as a matter of right, which is what this Court held in the prior opinion that Northrop in its claim letter, without disclosing the finance documents, had submitted a valid claim for money as a matter of right, damages as a matter of right, and the finance documents were not necessary to assert that claim, then they shouldn't be able to be used to defeat the claim. The contract for the assignment just shouldn't be relevant to the claim in this particular case.  In the initial case, we based that decision and we limited that to whether this Court had jurisdiction or not, and we said we're not addressing the merits at that point. So now you've come back on the merits, and you're almost making the same jurisdictional arguments you made before, making them on the merits, but I think you lose sight of the fact that we're talking about injury. If this was a tort case, you'd have a damaged leg. It's not a tort case, it's a contract case. Where is the injury? You have been paid. We haven't been paid under the contract. Let me ask you this, counsel. If you have no actual damages, do you have a claim for nominal damages? I think we have a claim for actual damages. So you're not going to answer this question either for me? I don't think our claim is for nominal damages. So if you have no actual damages, you have no nominal damages claim? I don't know how to answer that, Your Honor, other than the way I have. We have a claim for actual damages under the contract. We performed under the contract. There still remains a claim for breach that has never been tried in this case. As I said, if the government exercises the option, based on the analysis of the court below and the government, nobody would ever have to make those option payments. Those $2.7 million would never have to be paid because nobody could sue to collect that $2.7 million. So I'm not going to ask your opposing counsel then whether the government has a position on whether you could still seek cost under a nominal damages claim because you're not interested in that. So I'll abandon that question on your opposing counsel. Well, my response to that, Your Honor, would be if the court found that we had nominal damages because there was some value to this contract, we certainly wouldn't turn down the nominal damages and the opportunity to pursue this claim. It remains our position that the claim is for the entire amount that's outstanding because the government didn't meet its performance obligations. And it's also our position that the contract with the assignment company is not a matter that should be before this court because it's not necessary to assert a claim and the contract is void and the cases of Beaconware and Colonial Navigation are very similar. In Beaconware, as I said, Beaconware had no damages itself. Beaconware didn't perform anything under that contract. All the contract was performed by the subcontractor. The assignment with the subcontractor was void as to the government and therefore the only thing the court looked at was the contract between Beaconware and the government and it was the same thing with Colonial Navigation. Colonial Navigation was the contract. It was not entitled to keep any of the monies. All of the monies were just passed through from Beaconware to Spiota and in the other case from Colonial Navigation to Dunbar. This case is no different than those. We're past your time. Why don't we restore two minutes of rebuttal and let's hear from the government. Thank you. Thank you, Your Honor. May it please the court, Your Honor. I'm disinfectant, I apologize. So I would ask the court's indulgence if I have any further issues or need to take a sip of water. Could you start off by just telling us, because I wasn't, there was a lack of clarity in my view, at least, in your brief's attempt to distinguish Beaconware and Colonial. You have a bunch of paragraphs in there. Why don't you start there, if you would. Sure, Your Honor. Colonial and Beaconware are absolutely distinguishable from the facts of this case. Obviously, those were the two cases cited by this court in the previous opinion on the jurisdictional issue. And the reason those two cases are distinguishable from this case is that both of those cases were explicitly brought as pass-through claims. In Beaconware, I believe Beaconware specifically stated, I don't know if I have the language in front of me, that Beaconware is suing for the benefit of the bank. And so it put everyone on notice from the outset that it was not suing on its own behalf. It was suing for the benefit of the bank. Similarly, Colonial. So if they had come in here at the get-go and said, we are suing for the benefit of ESCGov, this would have been a different case? Yes, Your Honor, because then it would have been a pass-through claim. But it's not a pass-through claim here, and it's not a pass-through claim for two reasons. One is that it's the law of this case at this point that it's not a pass-through claim, because in this court's prior jurisdictional decision, this court specifically stated it's not a pass-through claim. And the other reason is that Northrop Grumman has, ever since the jurisdictional issue was raised, has repeatedly represented that this is not a pass-through claim and that it's not suing for the benefit of ESCGov or citizens or any other third party, that it is strictly bringing this claim in this case on its own behalf for expectancy damages on its own behalf, seeking to recover for harm that has been done to it. And so certainly we would argue it's judicially stopped from changing that now, not that Mr. Eisenberg has attempted to do so that I've seen. So those were cases that were explicitly pass-through claims. I would also distinguish Colonial on the grounds that there was no doubt that Colonial was injured. As a result, the facts of that case are somewhat complicated. I won't belabor them unless the court wants me to. But that $16,600 at issue in that case, the loss of that was felt by Colonial and not Keystone, which was the third party in that case. So that's a distinguishing factor as well. So, Your Honor, this is a very – I would like to respond to your question to Mr. Eisenberg earlier, because I think it gets to the heart of our argument here, which is that this, as near as we can tell, this is a very unique case factually. There's a lot of somewhat similar cases out there, but the key facts of this case as we see it are fourfold. One is that they did not comply with the Anti-Simon Act, and so that does not apply, that does not give any of these third parties rights that they would have had if they had complied with that. The second is that this arrangement between Northrop Grumman and ESCGov is somewhat unique in that it provides for an exoneration, and it provides for a full payment of all expected profits of Northrop Grumman. They fully concede this on page 8 of their brief, that that payment of $191,000 represented the full amount of profits they accepted to receive. Does that include the profits that they would have expected to receive under the optional maintenance years? Yes, Your Honor. That is the amount of profit they would have received had all three option years been exercised and all payments been made by the government. And then finally, the most distinguishing factor, I think, was the one I just mentioned, is that unlike a lot of the pass-through claims and the severing claims and beacon wear in Columbia, this is a case where they've stood before this Court before, they've stood before the Court of Federal Claims and said, this is not a pass-through claim. We are not attempting to recover money on behalf of ESCGov or citizens. This is our claim. We're bringing this on our own behalf, and we're seeking expectancy damages on our own behalf. I'm out of sync here. I think you said four, and I only counted three. Well, I have it written down as 2A and B, Your Honor. I had meant the full payment of profits and the exoneration as two separate factors. I apologize if that was unclear. And so as near as I can tell, this is a case of first impression where all four of those factors are present. And here, as the Court can no doubt tell and read in the cases below, Judge Leger explicitly pointed this out, the government is focusing on the damages. They're focusing on the government obligations. They're looking at this from two different sides. But the fact of the matter is this is a case about expectancy damages, and expectancy damages are necessarily focused on the harm that's experienced. Answer this question I asked the opposing counsel, although he sort of blew it off. Assuming that we find that there are no actual damages, is there a claim for nominal damages? Well, Your Honor, at the risk of doing the same thing, it's not something I had thought of before I walked into this courtroom. I would just point out they have never sought nominal damages. They have never sought anything other than actual expectancy damages. So it's not in the complaint in any fashion? No, Your Honor, not that I'm aware of. But those factors make this a unique case. And if we focus on the expectancy damages, as Judge Leger did below, and we focus on the actual harm that's experienced by Northrop Grumman and not any third party, under the restatement, under this Court's explanation of expectancy damages in Fifth Third Bank and other cases, there's simply no doubt that Northrop Grumman is in as good of a position as it would have been had all three option years been exercised. Where's the complaint in the record? Your Honor, I will have to take a look at that. I know we have the... I'm not sure that we have that in the joint appendix, Your Honor. That's a problem. What about a circumstance in which somebody takes out an insurance policy and it doesn't cost very much, and they say, if the government feels to pay, you pay us the insurance. So they're in the same position as these people are here, which is they're not suffering whether they win or lose on their claim against the government because they're going to be compensated either way. Yes, Your Honor. That's entirely distinguishable from this case. First of all, we'd say that to the extent there's a collateral source rule issue, that only applies in tort claims, not breach of contract claims. We would also note there's no... There's no allegation of double recovery here. We're not alleging that if the government has to make these payments, that ESCGov will be... Excuse me, not ESCGov. Northrop Grumman will somehow receive a double payment or be enriched because I don't think there's any doubt between the parties that those payments will go directly on to citizens. No, the reverse is being sort of the other side of the game here, which is that the government, assuming that it allegedly breached the contract, the government is getting recovery and is getting something for nothing here under these circumstances. Your Honor, if I may finish my thoughts on the insurance thing, I would like to address that point. But the final distinguishing factor, which I also think is very important, is that this is not a situation in which the alleged breach takes place and then there's something that's triggered that results in a payment that makes them whole. This was part of the design of their contract and their performance under the contract. They received that payment virtually immediately after entering into the contract in exchange for the assignment. And in fact, they've talked about being a financing agreement. It certainly doesn't look like a traditional financing agreement insofar as they received a loan and then paid. The payment was made directly from ESCGov to... Well, it doesn't look traditional in a lot of ways since it's sort of an in-house kind of deal. We agree, Your Honor, and there's some information that we noted in our brief to that extent. To get back to the court's windfall question, there simply wasn't a windfall here, and the facts that are in the record make that abundantly clear. The facts of this case are that this was a base year and three option years. The government paid Northrop Grumman in full for the base year. It received the software. It looked at the software and started exploring the capabilities of the software for that base year. Then when it didn't have funding to exercise the base year, it stopped using the software. And in fact, the record shows that it was actually never used in an actual investigation or intercept. And so it only used the software for that base year, which was the year it had paid for. So there's no allegation and no doubt based on the record that the government retained the software, kept using the software somehow, after the option years were not recognized. And so certainly we would argue that it got the benefit of that one-year bargain, but certainly did not get a further benefit for the option years that were not exercised. Your Honor, I see I'm starting to run a little low on time. I'd like to turn to the second issue if the court doesn't have any further questions. What about the argument of Mr. Eisenberg that, on the one hand, the government is saying we reject the financing agreement because it's null and void, and yet it relies on it in order to establish that Northrop Grumman has been made whole? Well, it's two different inquiries, Your Honor. The one inquiry, the Anti-Assignment Act inquiry, is whether or not it creates an enforceable claim for some other party against the government. There's no doubt that those procedures that were set forth in these statutes, 3727, were not followed, so there's no enforceable right of action, cause of action by any other party. But it's been on that basis that you've encouraged this court not to look at or consider the financing agreement. And now in this situation, with respect to damages, you're doing the same thing. Well, Your Honor, I may be a little... Excuse me. Other than the fact that now you're asking us to look at the financing agreement in order to determine that Northrop Grumman is already made whole. That's certainly the case, Your Honor. We want this court to look at these agreements. We've provided them, all of them, in the record, and we do think they establish beyond any doubt that they've been made whole. I'm not sure... I'm trying to think of when we may have represented that the court should not look at this financing agreement. So what does it matter to the government, then? If you've said we're not going to recognize a financing agreement, what does it matter to you what's going on between Northrop Grumman and the finance company? It matters for a couple of reasons, Your Honor. One is a simple principle issue of transparency that the government has some right to know with the party with whom it's doing business. And that's particularly acute here where we're talking about a software package that has national security implications, that has law enforcement implications, and that the government has a right to know with whom it's doing business. But the broader point, I think, is a simple fundamental principle of contract law that the party bringing the suit and recovering expectancy damages needs to be the party that was harmed. And this gets very convoluted in cases like this under Mr. Eisenberg and Northrop's interpretation of the law, where a party can bring a claim even though it hasn't been heard for some third party that the government may or may not have known about, despite the fact that it itself, again, based on the record here, has not suffered any harm whatsoever and is, in fact, in as good a position as it would have been in had the alleged breach not occurred. But you say that only because now you're, on the one hand, you're saying we're not going to recognize and we cannot recognize a financing agreement. On the other hand, you're waiving the financing agreement in this court saying they've been made whole under this financing agreement. I mean, you can't have it both ways, can you? Yes, Your Honor, because, again, it's two different. One, we're talking about expectancy damages law, and the other we're talking about a very specific statutory scheme, the Assignment of Claims Act that Congress has set forth, that these are the requirements that must be met in order for an SIE to bring a claim directly against the government. And so the law governing those two things, the two circumstances under which and to what extent this court can look to those financing agreements, are very different. And just finally, Your Honor, if I may, on the other point, other than this broader damages point, Judge Allegre did also hold that Northrop Grumman could not recover any amounts that were specifically itemized under its bid in the contract with the government for software and server maintenance. That was part of Northrop Grumman's bid for this contract. That was part of the express terms of the contract between the government and Northrop Grumman. Maintenance is a term that has plain meaning, which is ongoing care and upkeep. And in this case, because the government did not exercise any of the option years, and as I just previously stated, did not use that software beyond not exercising those option years, the undisputed fact is the government never needed any maintenance or upkeep or care to these software packages, and that work was never needed or performed. And under the H.B. Nelson case and other law, it's very clear that a contractor cannot recover for work not performed, so at the very least, we would ask this court to affirm Judge Allegre's partial grant of summary judgment as to those amounts. Thank you. Thank you. All right. I'd like to just start with the Anti-Assignment Act issue. Basically, this is an issue of contract law, and if there were compliance with the Anti-Assignment Act, what the government is saying is they wouldn't be raising this issue that there were no contract damages. The availability of contract damages cannot be dependent upon the Anti-Assignment Act. Contract damages either arise under the contract or they don't. If there were compliance with the Anti-Assignment Act, all of the proceeds would have been assigned to the finance company because the contractor had been paid in full, and the claim remains with the contractor. The contractor brings the claim. If the contractor is successful on the claim, the payment is made to the finance company under the Anti-Assignment Act. The finance company has no separate claim. The facts in this case are no different other than the fact that there wasn't compliance with the Anti-Assignment Act. That's not the course of action that was followed in this case. It seems to me you're being raised by your own petard here. You chose not to conform with the Anti-Assignment Act, and you chose a contractual language with the financing company that is odd. I mean, it paid to Northrop Grumman everything up front, knowing that there's contingencies out there. These option years could not be exercised. So you're asking us to look beyond your own device. Your Honor, I don't know that it's that odd because, as I said, to comply with the Anti-Assignment Act, all the proceeds have to be assigned to the finance company. That's what the Anti-Assignment Act says. All the proceeds wouldn't be assigned to the finance company unless the contractor had already been paid because the government is then going to make the payment directly to the finance company. Is there anything in the record about the motivation between the finance company and Northrop Grumman? I did find it odd that the finance company is essentially Northrop Grumman people. There's nothing in the record about that. In terms of whether it's a finance company or not a finance company, again, it's no different than in Colonial Navigation where it was Dunbar who was the party. They're not a finance company, and that assignment was void as to the government, yet Colonial Navigation. And Dunbar was not disclosed to the government. That arose afterwards as well, yet Colonial Navigation was allowed to proceed with the claim. The claim remains with the contractor. And with respect to the pass-through issue, the result, as I said, is less severe if it's a pass-through claim. If they disclose it as a pass-through claim under 7 in that whole line of cases, recovery would be allowed in this case. Here, the only party performing is Northrop Grumman. I understand you want to make your argument, but you would do better to try to answer my questions. I apologize. At least from my view. I guess I didn't get the question then. The question was about the relationship between Northrop Grumman and the former Northrop Grumman persons. And I said that there isn't much in the record about that. We haven't gotten that far in the case, and it wasn't part of really the summary judgment record. The government made certain factual disclosures about it with respect to the relationship based on the Jeff Nolan affidavit that we submitted. But in terms of whether that makes a difference, I would suggest that it does not make a difference. Because the issue is not really whether they're a valid finance company. That just has to do with whether they actually could have complied with the anti-Senate. It's just that it strikes me that, as Judge Raina said, it's odd. The terms are odd. The relationship is odd. That's all. The terms are odd probably because this court doesn't often deal with these financing contracts. But in terms of these financing contracts, in terms of how they're done, that is a typical way in which they're done. Where the finance company pays the contractor up front. And then the contractor, when they receive them, the contractor does the performance. Because the contract with the finance company, the government is not a third-party beneficiary of that contract. In the normal course, the finance company has no recourse other than to rely on the kindness of Northrop. Well, they have some recourse. Because if Northrop doesn't pursue a claim, and it is a claim that the parties believe is valid, then Northrop has to make a payment to the finance companies. There's a defined damage. I misspoke. Other than to rely on the competence of Northrop. And that's the risk that the finance company takes. Is that the norm? That is the norm. And that's what it says in the Produce Factors and the Continental Bank case. That the risk remains with the finance company that the contractor will perform. And they're basing it on that. And, in fact, in the Continental Bank case, the contractor did not perform. And so the bank was out. I'm sorry, the Produce Factors case. The bank was out because the contractor didn't perform. That's the risk that the finance company takes. In this case, the performance is suing the government. No, the performance was that Northrop Grumman performed under the contract because they delivered the software. That's why it's odd. I think we have your right to make a thing for the parties. The case is submitted, and that concludes our proceedings. All rise.